UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| First Horizon Bank,<br><br>Plaintiff,<br><br>-v-<br><br>Intercontinental Capital Group, Inc. and Dustin DiMisa,<br><br>Defendants. | 2:23-cv-9380<br>(NJC) (ARL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff First Horizon Bank ("FHB") brought this case against Defendants Intercontinental Capital Group, Inc. ("ICG") and Dustin DiMisa ("DiMisa") (together, "Defendants") on December 20, 2023, seeking the payment of an alleged $1,954,900.72 balance on a "Purchase Card" issued by FHB to ICG and guaranteed by DiMisa as chief executive officer of ICG. (Compl., ECF No. 1.) The Complaint brings claims for "breach of contract" ("Claim I" (against ICG) and "Claim II" (against DiMisa)), "account stated" ("Claim III" (against both Defendants)), "unjust enrichment" ("Claim IV" (against both Defendants)), and "money had and received" ("Claim V" (against ICG only)). (*Id.* ¶¶ 11–25.)

Before the Court is ICG's unopposed Partial Motion to Dismiss Claims IV and V of the Complaint ("Motion"). (Mot. Dismiss, ECF No. 18.) For the reasons set forth below, I grant the Motion and dismiss Claims IV and V against ICG.

## BACKGROUND

The following facts are taken from the Complaint (Compl.), as well as the documents attached to the Complaint,[1] which include:

(1) The Purchasing Credit Card Account Agreement between FHB and ICG ("Purchasing Card Agreement," ECF No. 1-3);

(2) The Mortgage Warehouse Loan and Security Agreement executed and delivered to FHB by DiMisa in his capacity as the personal guarantor of ICG's debts arising under the Purchasing Credit Card Account Agreement ("Mortgage Agreement," ECF No. 1-4); and

(3) The Amended Mortgage Warehouse Loan and Security Agreement executed and delivered to FHB by DiMisa in his capacity as the personal guarantor of ICG's debts arising under the Purchasing Credit Card Account Agreement ("Amended Mortgage Agreement," ECF No. 1-5).

FHB is a Tennessee-based state-chartered bank. (Compl. ¶ 2.) ICG is a New York-based corporation, and DiMisa is the chief executive officer of ICG. (*Id.* ¶¶ 3–4; Purchasing Card Agreement, Signature Page.) The Complaint does not assert any allegations regarding the type of business in which ICG and DiMisa are engaged.

The Complaint alleges that, on or about May 10, 2021, FHB and ICG entered into the Purchasing Card Agreement, pursuant to which FHB gave ICG access to up to $2,000,000.00 in credit "for commercial purchases." (Compl. ¶¶ 6–7.) On or about June 28, 2021, DiMisa "executed and delivered to FHB" the Mortgage Agreement, and on or about November 22, 2021, he "executed and delivered to FHB" the Amended Mortgage Agreement. (*Id.* ¶¶ 8–9.) The Complaint alleges that, as of December 20, 2023, ICG and DiMisa owed FHB $1,954,900.72 in unpaid purchases on the line of credit, plus interest and late fees. (*Id.* ¶ 10.) FHB has brought this action to recover those funds.

---

[1] At the motion to dismiss stage, a court may consider documents that are attached to the complaint, incorporated by reference in the complaint, integral to the complaint, or otherwise the subject of judicial notice. *Clark v. Hanley* 89 F.4th 78, 93 (2d Cir. 2023).

## PROCEDURAL HISTORY

FHB filed the Complaint in this action on December 20, 2023, and DiMisa filed an Answer on May 29, 2024. (Compl.; Answer, ECF No. 11.) On May 31, 2024, ICG filed a motion to dismiss Claims IV and V of the Complaint, which I denied with leave to renew in light of ICG's failure to file a letter seeking a pre-motion conference, as required under this Court's Individual Rules. (ECF No. 14; Elec. Order, June 1, 2024; Individual Rule 5.1.) On June 7, 2024, ICG filed a letter seeking a pre-motion conference in anticipation of its Motion to Dismiss Claims IV and V. (ECF No. 15.) On June 10, 2024, I ordered FHB to file any response letter by June 14, 2024. (Elec. Order, June 10, 2024.) On June 27, 2024, I noted that FHB failed to file an opposition letter and, accordingly, set a briefing schedule on the full Motion. (Elec. Order, June 27, 2024.)

Pursuant to the briefing schedule and this Court's recommended bundling practice, *see* Judge Choudhury Individual Rule 5.2.6, ICG filed the fully bundled Motion to Dismiss on September 10, 2024. (Mot. Dismiss; Mem. Supp. Mot. Dismiss ("Mem."), ECF No. 18-1.) Along with its Motion papers, ICG filed a letter representing that "[n]o opposition to the Motion was ever received by [ICG's counsel] from counsel for Plaintiff, and, as such, the Motion is unopposed." (Mot. Bundling Ltr., ECF No. 18-8.)

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a) (granting federal district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States").

As to the amount in controversy requirement, the Complaint seeks damages in the amount of "$1,954,900.72, plus fees and costs." Compl. at 6; *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (holding that "a plaintiff invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied" and that the Second Circuit "recognize[s] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy").[2]

Further, although the Complaint is deficient in pleading diversity of citizenship, as explained below, the Complaint and other documents in the record taken together establish complete diversity between the parties for three reasons.

First, the Complaint sufficiently establishes that FHB is a citizen of Tennessee because it alleges that "FHB is a Tennessee state[-]chartered bank with its principal place of business located at 165 Madison Avenue, Memphis, Tennessee 38103." Compl. ¶ 2; *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 220 (2d Cir. 2016) (holding that "a state-chartered corporation—which includes state-chartered banks—is a citizen of both the state of incorporation and the state of its 'principal place of business'" under 28 U.S.C. § 1332(c)(1)).

Second, although the Complaint alleges that ICG is incorporated in and has its principal place of business in New York, the Complaint fails to allege ICG's citizenship because these allegations are made "[u]pon information and belief." Compl. ¶ 3; *Snyder Corp. v. Fitness Ridge Worldwide, LLC*, No. 18-cv-351, 2018 WL 1428254, at *2 (W.D.N.Y. Mar. 22, 2018) (establishment of diversity requires affirmative statements of the identity and citizenship of all parties and the members thereof; conclusory statements upon information and belief are

---

[2] Unless otherwise noted, case quotations omit all internal citations, quotation marks, and brackets.

insufficient); *Enteado v. Hi-Power Cycles, LLC*, No. 16-cv-996, 2016 U.S. Dist. LEXIS 28880, at *2 (D.N.J. Mar. 7, 2016) (holding that "jurisdictional allegations made 'upon information and belief,' are insufficient to convince the Court that diversity exists between the parties"). Nevertheless, DiMisa, the chief executive officer of ICG, admits the truth of these allegations in his Answer. (Answer ¶ 3.) Accordingly, the record establishes that ICG is a citizen of New York for the purposes of diversity jurisdiction.

Third, the Complaint fails to allege DiMisa's citizenship for the following reasons: (1) it supports the conclusory allegation that DiMisa is a "citizen of the State of New York" with only the allegation that DiMisa is a "resident" of New York; and (2) the allegations are, again, made "[u]pon information and belief." (Compl. ¶ 4.) Despite these deficiencies, the record contains sufficient additional facts establishing that DiMisa is a citizen of New York, including: (1) that he is the chief executive officer of ICG, which is incorporated in and has its principal place of business in New York (Purchasing Card Agreement, Signature Page); (2) that DiMisa maintains a telephone number with a New York area code (*id.*); and (3) that DiMisa admits in his Answer that he is a resident and citizen of New York (Answer ¶ 3). *See Lever v. Lyons,* No. 16-cv-5130, 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (finding, among other things, evidence of a party's "current residence" and "places of employment or business" to be probative of the party's citizenship); *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19-cv-3868, 2020 WL 1503558, at *4 (S.D.N.Y. Mar. 30, 2020) (finding party's maintenance of personal and business phone numbers with New York area codes to be probative of the party's citizenship in New York). Therefore, the record sufficiently establishes that DiMisa is a citizen of New York.

Accordingly, because Plaintiff FHB is a citizen of Tennessee and Defendants ICG and DiMisa are citizens of New York, and because the amount in controversy exceeds $75,000, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

Defendants did not raise personal jurisdiction or insufficient service of process defenses under Rule 12(b)(2) or (b)(5), Fed. R. Civ. P., and such defenses are therefore waived. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [a Rule 12(b)(2) or (b)(5) defense] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . .").

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). In determining if a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School District*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a]

6

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

"Where a Plaintiff fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited. In such a situation, 'the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Green v. Westchester Cnty.*, No. 19-cv-307, 2020 WL 5603479, at *2 (S.D.N.Y. Sept. 18, 2020) (quoting *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000)). "As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Jackson v. Jackson*, No. 16-cv-8516, 2018 WL 1918626, at *2 (S.D.N.Y. Apr. 20, 2018) (citing *McCall*, 232 F.3d at 322).

## DISCUSSION

ICG moves to dismiss Claims IV and V of the Complaint under Rule 12(b)(6) for failure to state a claim. Specifically, ICG argues that Tennessee law applies pursuant to a choice of law provision in the Purchasing Card Agreement and that, "[u]nder federal and Tennesee law," FHB's "unjust enrichment" and "money had and received" claims must be dismissed as duplicative of its breach of contract claims. (Mem. at 1–2.)

As I previously noted, FHB filed neither a response to ICG's letter seeking a pre-motion conference nor a brief in opposition to ICG's Motion to Dismiss. Assuming the truth of the Complaint's factual allegations and testing only their legal sufficiency, I grant ICG's Motion.

7

I. **Choice of Law**

"A federal court sitting in diversity . . . must apply the choice of law rules of the forum state." *Fireman's Fund Ins. Co. v. Great American Ins. Co of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016). "Generally, New York courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Id.* (citing *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (2006)). This is because "a basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent." *Id.*

Here, the Purchasing Card Agreement signed by FHB and DiMisa on behalf of ICG specifically provides that "[t]his Agreement is governed by federal laws and the laws of Tennessee (except conflicts-of-law rules or other principles that might require the application of the laws of another jurisdiction) as they each apply." (Purchasing Card Agreement ¶ 39.) As this case concerns breach of contract and related claims arising exclusively under state common law, federal law does not apply to the merits of these claims. (*See* Compl. ¶¶ 11–25 (bringing five claims under state law).) Further, Tennessee law "bears a reasonable relationship to the parties or the transaction," since FHB is incorporated in and has its principal place of business in Tennessee. Compl. ¶ 2; *see Ergowex Intern., LLC v. Maxwell Corp. of Am.*, 18 F. Supp. 3d 430, 439 n.5 (S.D.N.Y. 2014) (finding a "reasonable relationship" between New Jersey law and the parties where, among other things, one of the parties was "a New Jersey corporation"). Accordingly, pursuant to the Purchasing Card Agreement's choice-of-law clause, Tennessee law applies to this dispute.

## II. The Complaint's Duplicative Claims

Under Tennessee law, unjust enrichment and money had and received claims are quasi-contractual claims. *Vanderbilt Univ. v. Scholastic, Inc.*, 541 F. Supp. 3d 844, 867 (M.D. Tenn. 2021) ("Unjust enrichment is a quasi-contractual theory that imposes a contractual obligation where one does not exist.") (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966)); *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) ("Both unjust enrichment and money had and received are essentially the same cause of action, being both quasi-contractual actions.").[3] Such claims arise when: "(1) there is no contract between the parties, or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Vanderbilt Univ.*, 541 F. Supp. 3d at 867 (citing *Paschall's, Inc.*, 407 S.W.2d at 154–55; *Cry-Leike, Inc. v. Carver*, 415 S.W.3d 808, 824 (Tenn. 2011)).

"[B]ecause [a quasi-contractual claim] requires the absence of a valid contract, it is true that recovery may not be had under both a breach of contract and a[] [quasi-contractual] theory." *Id.* While at the pleading stage a plaintiff may bring both breach of contract and quasi-contract claims, "in order to alternatively plead these two claims, a plaintiff must plead, alternatively to the contract being valid, [that] the contract was invalid or unenforceable; otherwise, the plaintiff has not adequately plead the two elements" of a quasi-contractual claim under Tennessee law. *Kalos, LLC v. White House Village, LLC*, No. 20-cv-812, 2020 WL 7027502, at *4 (M.D. Tenn.

---

[3] *See also Paschall's, Inc.*, 407 S.W.2d at 154 ("Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.").

Nov. 30, 2020); *see also Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (granting summary judgment dismissing unjust enrichment claim where the record showed the contract at issue was "clear and unambiguous" and properly executed); *Daugherty v. Sony Elecs., Inc.*, No. E2004-02627-COA-R3-CV, 2006 WL 197090, at *6 (Tenn. Ct. App. Jan. 26, 2006) ("Because Plaintiff's complaint establishes the existence of a valid and enforceable contract between Plaintiff and Sony, Plaintiff failed to state a claim upon which relief can be granted for unjust enrichment, and the Trial Court properly dismissed this claim.").

Here, the Complaint asserts no allegations concerning the invalidity or unenforceability of the Purchasing Card Agreement. As to Claim IV, for unjust enrichment, the Complaint contains only two paragraphs—one realleging all preceding allegations (none of which allege the invalidity or unenforceability of the Purchasing Card Agreement) and another alleging that "[a]s a result, FHB is entitled to recover on an amount equal to the value conferred on Defendants which is not less than $1,954,900.72 plus interest." (Compl. ¶¶ 22–23.) Similarly, as to Claim V, for money had and received, the Complaint contains only one paragraph realleging all preceding paragraphs and another paragraph alleging, "By reason of the foregoing, Defendant ICG is indebted to FHB in the sum of $1,954,900.72 for money it had and received, together with interest thereon, attorneys' fees and the costs and disbursements of this action." (*Id.* ¶¶ 24–25.) Further, the Complaint alleges facts asserting the validity and enforceability of the Purchasing Card Agreement. (*Id.* ¶ 6 ("On or about May 10, 2021, FHB and ICG entered into the Agreement."), ¶ 7 ("On or about May 10, 2021, pursuant to the terms of the Agreement, FHB extended to ICG a Purchase Card."), ¶ 14 ("In addition, pursuant to the terms of the Agreement, ICG is liable for all costs incurred by FHB in proceedings to collect and enforce the amounts

10

owed under the Agreement.").) Accordingly, the Complaint fails to state a claim against ICG for unjust enrichment and money had and received.[4]

I note that some courts applying Tennessee law have allowed quasi-contractual claims pled in the alternative to breach of contract claims to proceed past the motion to dismiss stage and instead address on a full record whether to dismiss those claims on summary judgment, if they find that there is no disputed fact as to the existence of a valid, enforceable contract. *See Vanderbilt Univ.*, 541 F. Supp. 3d at 867 ("Although it is true a party may plead unjust enrichment as an alternate theory of relief at the Motion to Dismiss stage, at the summary judgment stage, a court forecloses that opportunity if . . . it finds that here in fact *was* a valid contract."); *PSC Indus. v. Johnson*, No. 19-cv-362, 2021 WL 1663574, at *23 (M.D. Tenn. Apr. 28, 2021) ("Because there was a valid contract between the parties (which Plaintiff itself argues, successfully), Plaintiff cannot also maintain an unjust enrichment claim, and the Court will grant summary judgment to Defendant on this claim."). Dismissal at the pleading stage is appropriate here, however, because, as previously noted, the Complaint does not allege the necessary elements of a quasi-contractual claim. *See Kalos*, 2020 WL 7027502, at *4.

---

[4] ICG's brief in support of its Motion is deficient in its analysis of the law applicable to this issue. ICG's entire brief cites only two cases. The first, *Sinanovic v. Wagner College*, applies New York law, not Tennessee law, and thus is irrelevant. No. 20-cv-5181, 2022 WL 4644238, at *3 (E.D.N.Y. Oct. 1, 2022) ("Under New York law, it is well established that the relationship between a college and its students is 'contractual in nature.'"). The second, *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, though applying Tennessee law, contains only the following recitation of the procedural history: "The [lower] court also dismissed IHS's claims for conversion and unjust enrichment claims as duplicative of its breach of contract claim." No. M2015-0254-COA-R3-CV, 2017 WL 2105988, at *5 (Tenn. Ct. App. May 15, 2017). Furthermore, the opinion in that case makes clear that the lower court dismissed the quasi-contractual claims *after trial*, not, as here, on a motion to dismiss. *Id.* Despite ICG's inadequate briefing and given my obligation to test the sufficiency of the pleadings' allegations in light of FHB's failure to oppose the Motion, I have located and analyzed the relevant law to reach my conclusions in this Order.

## CONCLUSION

For the reasons set forth above, ICG's Partial Motion to Dismiss the Complaint (ECF No. 18) is granted and Claims IV and V against ICG are dismissed with prejudice.[5]

Dated: Central Islip, New York
　　　　May 30, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Nusrat J. Choudhury
　　　　　　　　　　　　　　　　　　　　　　　　NUSRAT J. CHOUDHURY
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] Unlike ICG, DiMisa did not move to dismiss Claim IV, and, accordingly, this claim proceeds against him. The Complaint brings Claim V against ICG only, and thus this claim is dismissed in its entirety.